Filed 4/23/13 (unmodified opn. attached)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| FRIENDS OF OCEANO DUNES, INC.,<br><br> Plaintiff and Appellant,<br><br>v.<br><br>SAN LUIS OBISPO COUNTY AIR POLLUTION CONTROL DISTRICT et al.,<br><br> Defendants and Respondents. | 2d Civil No. B248814<br>(Super. Ct. No. CV120013)<br>(San Luis Obispo County)<br>MODIFICATION OF OPINION AND<br>DENIAL OF REHEARING<br>No Change in Judgment |

THE COURT:

It is ordered that the opinion filed herein on April 6, 2015, be modified as follows:

1. On page 3 of the first full paragraph delete the words "regulate the operation of" appearing at the end of the first sentence and insert the words "require a permit for." The sentence will then read: At issue is whether District is statutorily authorized to require a permit for the operation of the Oceano Dunes State Vehicular Recreational Area . . . .

2. On page 6, line one of the third paragraph, delete the words "precluded from regulating" and insert therein "not statutorily authorized to impose a permit system." The sentence will then read: Because air pollution control districts are not statutorily authorized to impose a permit system on indirect sources . . . .

3. On page 7, line 4 delete the words "then any local air pollution district" and insert the words "by a permit system, then any local air pollution control district . . .

The sentence will then read: "If off-road recreational vehicles cause or exacerbate PM10 emissions and District can regulate them by a permit system, then any local air pollution control district could control any recreational activity . . . ."

The Petition for Rehearing is denied.

No change in judgment.

CERTIFIED FOR PUBLICATION

Filed 4/6/15 (unmodified version)

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| FRIENDS OF OCEANO DUNES, INC., <br><br> Plaintiff and Appellant, <br><br> v. <br><br> SAN LUIS OBISPO COUNTY AIR POLLUTION CONTROL DISTRICT et al., <br><br> Defendants and Respondents. | 2d Civil No. B248814 <br> (Super. Ct. No. CV120013) <br> (San Luis Obispo County) |

Consistent with the laudable goal of safeguarding the public health, the trial court "stretched" to find a dictionary definition of the word "contrivance" to describe a state park. As Justice Oliver Wendall Holmes said: "A word is not a crystal, transparent and unchanged; It is the skin of a living thought and may vary greatly in color and content according to the circumstances and the time in which it is used." (See *Almar Limited v County of Ventura* (1997) 56 Cal.App. 4th 105, 106.) This appeal "turns" on the meaning of the word "contrivance." (*Id.*, at p. 107.) Neither the trial court nor an appellate court is at liberty to pick a dictionary definition to reach a desired result (See *People v. Arno* (1979) 90 Cal.App.3d 505, 514, fn.2.) As we shall explain, the time-honored rule of ejusdem generis requires that in the context of construing Health and Safety Code section 42300 subdivision (a) a state park is not a "contrivance." Thus, the trial court erroneously ruled that a local air pollution control district has the power to regulate air emissions emanating from a state park by a permit requirement.

Friends of Oceano Dunes, Inc., a California non-profit corporation and voluntary association, appeals the dismissal of its writ of mandate petition (Code Civ. Proc., § 1085) and complaint for declaratory/injunctive relief.   Appellant contends that the San Luis Obispo County Air Pollution Control District (District) exceeded its authority in adopting rule 1001 of Regulation X, Fugitive Dust Emission Standards Limitation and Prohibitions (Rule 1001), which requires that the California Department of Parks and Recreation obtain an air emissions permit to operate the Oceano Dunes States Vehicular Recreation Area.  The trial court found that Health and Safety Code section 42300 subdivision (a) authorized District to impose a permit system to regulate sand and dust emissions caused by off-road recreational vehicles using the state park.[1]

*Air Pollution Regulation*

Two statutory schemes regulate air quality in California: the Federal Clean Air Act (42 U.S.C. §§ 7401 et seq.) and the California Clean Air Act (§§ 39000 et seq.).  (See *California Bldg. Industry Assn. v. San Joaquin Valley Air Pollution Control Dist.* (2009) 178 Cal.App.4th 120, 125.)  Under the federal Clean Air Act, the Environmental Protection Agency (EPA) sets national air quality standards for the maximum allowable concentration of a given pollutant.  (*Ibid*.)  Each state has the primary responsibility for assuring air quality within its geographic area.  (*Ibid*.)

Under the California Clean Air Act, the California Air Resources Board (CARB) is charged with developing a state implementation plan to ensure compliance with federal air quality standards.  (§§ 39602; 41502-41505.)   CARB is solely responsible for vehicular sources of air pollution.  (§39002.)  Local and regional air pollution control districts have the primary responsibility of controlling air pollution from all sources other than vehicular sources.  (*Ibid*.)  Section 42300 subdivision (a) provides: "Every district board may establish by regulation, a permit system that requires . . . that before any person builds, erects, alters, replaces, operates, or uses any article, machine, equipment, or other

---

[1] Unless otherwise stated, all statutory references are to the Health and Safety Code.

contrivance which may cause the issuance of air contaminants, the person obtain a permit to do so from the air pollution control officer of the district."

At issue is whether District is statutorily authorized to regulate the operation of the Oceano Dunes State Vehicular Recreational Area (SVRA), a 3,600 acre recreational park consisting of natural beach and sand dunes.  SVRA, formerly known as the Pismo Dunes State Vehicular Area, was created in 1974 for dune buggies and off-road recreational vehicles.  (*Sierra Club v. Department of Parks & Recreation*  (2012) 202 Cal.App.4th 735, 739.)  Approximately 2,100 acres of the park are closed to motorized recreation and managed as native habitat.  The SVRA hosts 1.6 million visitors a year who camp, walk, fish, surf, and operate off-road vehicles on the beach and sand dunes.  Operation of the SVRA is important to the state park system, to off-road recreational vehicle communities, and to the local coastal economy.

*Rule 1001 - Regulation of Dune Vehicle Activity Areas*

After research groups determined that the SVRA was a contributing factor to elevated PM10 emissions,  District conducted its own study and found that off-road recreational vehicles de-vegetate and disturb the surface crust of sand dunes. [2]  This disturbance increases the ability of winds to blow sand and dust inland to Nipomo Mesa.  PM10 levels at Nipomo Mesa exceed state health standards approximately 65 days a year, exposing residents to serious health risks.  In response to the air emissions problem, District adopted Rule 1001 (entitled "Coastal Dunes Dust Control Requirements") which applies to any operator of a coastal dune vehicle activity area greater than 100 acres in size.  Rule 1001 provides:  "All facilities subject to this rule shall obtain a Permit to Operate from the Air Pollution Control District . . . ."  (Paragraph C, § 5.)

---

[2] Under the federal Clean Air Act, the EPA has established national ambient air quality standards and identified criteria pollutants that include course particulate matter (PM 10). (See *California Unions for Reliable Energy v. Mojave Desert Air Quality Management Dist.* (2009) 178 Cal.App.4th 1225, 1231-1232.)  "Particulate matter (PM) refers to very small solid or liquid particles that can be suspended in the atmosphere." (*Id.*, at p. 1231.)

3

*Trial Court Ruling*

Appellant filed a petition for traditional writ of mandate and complaint for injunctive/declaratory relief alleging that Rule 1001 exceeds District's statutory authority. California Department of Parks and Recreation (State Parks) was named as a real party in interest. Denying the writ petition, the trial court concluded that section 42300 granted District authority to treat the SVRA as a direct source of air pollution. The trial court found that "a managed recreational facility is reasonably viewed as 'a contrivance' devised by man -- i.e., -- not something that occurs naturally, which causes the emissions of airborne particulate matter (sand and dust) from the dunes."

*Standing*

District argues that appellant lacks standing to prosecute the appeal because it is not prejudicially affected by the judgment. "As a general rule, a party must be 'beneficially interested' to seek a writ of mandate. (Code Civ. Proc., § 1086.)" (*Save the Plastic Bag Coalition v. City of Manhattan Beach* (2011) 52 Cal.4th 155, 165.) The beneficial interest must be direct and substantial. (*Id.*, at p. 166.) The trial court found that appellant has a beneficial interest in the operation of the SVRA and standing to bring the action. We concur. The continued operation of the SVRA directly affects appellant and its members who have an interest in ensuring that District does not eliminate or restrict off-road vehicle recreation.

The "public interest" exception also confers standing where the question is one of an important public right and the object of the action is to enforce a public duty. (*Save the Plastic Bag Coalition v City of Manhattan Beach, supra,* 52 Cal.4th at p. 166 [corporate plaintiff can have both public interest and beneficial interest standing where the challenged rule has a severe and immediate effect on member's activities].) The interpretation and scope of section 42300 is a matter of general public interest that affects a broad swath of recreational park users and 35 air pollution control districts. (See e.g., *Watershed Enforcers v, Department of Water Resources* (2010) 185 Cal.App.4th 969, 978.) Santa Barbara County Air Pollution Control District, in its amicus brief, concedes that the appeal presents

4

an important issue of statutory interpretation affecting the permit authority of all California air pollution control districts.

*Standard of Review*

District argues that Rule 1001 is a quasi-legislative act entitled to great deference by the court. (See *American Coatings Assn. v. South Coast Air Quality Management District* (2012) 54 Cal.4th 446, 461.) Air pollution control districts have the authority to "adopt and enforce rules and regulations to achieve state and federal ambient air quality standards, in all areas affected by emission sources under their jurisdiction. . ." (§ 40001, subd. (a).) Here the writ petition focuses on the narrow issue of whether Rule 1001 exceeds District's lawmaking authority. "[W]hen an implementing regulation is challenged on the ground that it is 'in conflict with the statute' [citation] or does not 'lay within the lawmaking authority delegated by the Legislature [citation], the issue of statutory construction is a question of law on which a court exercises independent judgment. [Citation.] In determining whether an agency has incorrectly interpreted the statute it purports to implement, a court gives weight to the agency's construction. [Citation.] 'How much weight . . . is "situational," and greater weight may be appropriate when an agency has a ' "comparative interpretive advantage over the courts" ' as when " 'the legal text to be interpreted is technical, obscure, complex, open-ended, or entwined with issues of fact, policy, and discretion.' " [Citation.]) 'Nevertheless, the proper interpretation of a statute is ultimately the court's responsibility.' [Citation.]" (*Western States Petroleum Assn. v. Board of Equalization* (2013) 57 Cal.4th 401, 415-416.)

*Direct versus Indirect Sources of PM10 Emissions*

Section 42300, subdivision (a) provides that an air pollution control district may require "that before any person builds, erects, alters, replaces, operates or uses any article, machine, equipment, or other contrivance that may cause the issuance of air contaminants, the person obtain a permit to do so from the air pollution control officer of the district." "Person" includes any state or local governmental agency. (§ 39047, subd. (b).) Before Rule 1001 was adopted, no air pollution control district has ever required that a state park obtain a permit for the use of off-road recreational vehicles. The reason is

5

straightforward. Air pollution control districts are not statutorily authorized to regulate motor vehicle emissions (§ 40000) or impose a permit system on indirect sources of air pollution. (See 76 Ops. Cal. Atty. Gen. 11, 19 (1993).)

Although the California Clean Air Act does not say what an "indirect source" is, the federal Clean Air Act defines "indirect source" to mean "a facility, building, structure, installation, real property, road, or highway which attracts, or may attract, mobile sources of pollution. Such term includes parking lots, parking garages, and other facilities subject to any measure for management of parking supply . . . . Direct emissions sources or facilities at, within, or associated with, any indirect source shall not be deemed indirect sources. . . ." (42 U.S.C. § 7410(a)(5)(C); see *California Building Industry Assn. v. San Joaquin Valley Air Pollution Control Dist.* (2009) 178 Cal.App.4th 120, 126.) [3] An example would be a sports facility or parking structure that attracts vehicles (i.e., a mobile source activity). (42 U.S.C. § 7410, subd. (a)(5)(C); see *South Terminal Corp. v. Environmental Protection Agency* (1st. Cir, 1974) 504 F.2d 646, 668, fn. 24.)

District's South County Phase 2 Particulate Study, which is the genesis for Rule 1001, states that SVRA off-road vehicular activities are an indirect source of PM10 emissions: "Offroad vehicle activity on the dunes is known to cause de-vegetation, destabilization of dune structure and destruction of the natural crust on the dune surface []. All of these act to increase the ability of winds to entrain sand particles from the dunes and carry them to the Mesa, which is an *indirect* emissions impact from the vehicles." (*Emphasis added*.)

Because air pollution control districts are precluded from regulating indirect sources of PM10 emissions, District asserts on appeal that fugitive dust/sand from the SVRA is a direct source emission. We reject this contention. The argument would be plausible if a state park was operating a sand quarry or removing contaminated soil with

---

[3] The California Air Regional Board defines "indirect source" as "any facility, building, structure or installation, or combination that attracts mobile source activity that results in the emissions of any pollutant for which there is a state ambient air quality standard." (*California Building Industry Assn. v. San Joaquin Valley Air Pollution Control Dist.*, *supra,* 178 Cal.App.4th at p. 137.)

6

machinery.  The Legislature has provided that those activities (a stationary source emitting air pollutants) are subject to regulatory permits.[4]  (See e.g., § 42310.5 [asphalt plants]; §§ 42314.1, 42315 [facilities that burn municipal waste, landfill gas, or digester gas].)  A sand dune, however, is an inert mound of sand.  If off-road recreational vehicles cause or exacerbate PM10 emissions and District can regulate them, then any local air pollution district could control any recreational activity that combines with any natural phenomenon causing air pollution.  This would include boats on a lake, motorcycles in a desert, and snowmobiles in a forest.

### Is a State Park a "Contrivance?"

District argues that it has section 42300 regulatory power over the SVRA because an "other contrivance" is any man-made improvement that is a direct source of air emissions.  "Contrivance" is commonly defined as a "mechanical device" or "an artificial arrangement or development."  (Webster's Collegiate Dictionary (10th ed. 1999), p. 252; see *Baugh v. Beatty* (1949) 91 Cal.App.2d 786, 791 [using Webster's definition of "contrivance"].)  For purposes of statutory interpretation, the doctrine of e*jusdem generis* applies.  In *Moore v. California State Bd. of Accountancy* (1992) 2 Cal.4th 999, 1011-1012, our California Supreme Court has defined this doctrine as follows:   "[W]hen a statute contains a list or catalogue of items, a court should determine the meaning of each by reference to the others, giving preference to an interpretation that uniformly treats items similar in nature and scope.  [Citations.]  In accordance with this principle of construction, a court will adopt a restrictive meaning of a listed item if acceptance of a more [expansive] meaning would make other items in the list unnecessary or redundant, or would otherwise make the item markedly dissimilar to the other items in the list.  [Citations.]"  (*Ibid.*)

---

[4] Section 42310 (which is referenced in section 42300, subdivision (a)) lists activities that are exempt from air emissions regulatory permits: the operation of vehicles; structures designed for and used exclusively as a dwelling for not more than four families; incinerators used in connection with those structures, barbecue equipment not used for commercial purposes, and repairs or maintenance not involving structural changes to any equipment for which a permit has been granted.

Here the statutory list is "any article, machine, equipment, or other contrivance which may cause the issuance of air contaminants." (§ 42300, subd. (a).) Under the rule of *ejusdem generis,* the general term ["other contrivance"] is " 'restricted to those things that are similar to those which are enumerated specifically.' [Citation.]" (*Harris v. Capital Growth Investors XIV* (1991) 52 Cal.3d 1142, 1160, fn. 7; see Civ. Code, § 3534 ["Particular expressions qualify those which are general."] "Other contrivance" refers to an article, machine equipment or device that a person builds, erects, alters, replaces, operates, or uses.

District argues that the SVRA is a "contrivance" because it has gates, fences, walking paths, access roads, signage, parking lots, and restrooms. But these improvements to the dunes are not the cause of the emissions. They do not directly or indirectly cause emissions and without them, off-road recreational vehicles would still go to the park. We do not believe that a fence or sign designating the sand dunes as an off-road recreational area makes the SVRA a "contrivance" or a direct source of air pollution. If the rule was otherwise, District would have the authority to regulate the operation of any state park simply because the park has as a fence, gate, sign, or parking lot.

Pursuant to the ejusdem generis rule, the courts could reasonably construe the word "contrivance" as e.g., any tool, implement, apparatus, device, appliance or mechanism. They are "similar in nature and scope" with the words, "article, machine, equipment." The objective reader should ask whether a state park is "similar in nature and scope" with the words "article, machine, equipment." We borrow from Justice Holmes. A word, the skin of a living thought, can be stretched only so far before a new color and content emerges. The "circumstances" in which the word "contrivance" is used in section 42300 subdivision (a) compel the conclusion that the Legislature did not contemplate that a "contrivance" would include a state park.

If District wants to add a state park to the section 42300 list, the remedy lies with the Legislature. Rule 1001, as written, attempts to do indirectly what District cannot do directly. We have no power to rewrite section 42300 or, under the guise of construction, read into the statute something the Legislature omitted. " ' "Courts must take a statute as

8

they find it, and [even] if its operation results in inequality or hardship in some cases, the remedy therefore lies with the legislative authority." ' [Citation.]" (*Sierra Club. v. Department of Parks & Recreation, supra,* 202 Cal.App.4th at p. 744.) We express no opinion on whether or how the Legislature should remedy the perceived problem.

The judgment (order dismissing petition for writ of mandate and complaint for injunctive/declaratory relief) is reversed. Appellant is awarded costs on appeal.

CERTIFIED FOR PUBLICATION


                                                          YEGAN, J.
We concur:


GILBERT, P. J.


PERREN, J.


9

Charles S. Crandall, Judge

Superior Court County of San Luis Obispo

_____

Thomas D. Roth for Plaintiff and Appellant.

Adamski, Moroski, Madden, Raymond A. Biering and Jeffrey A. Minnery for Defendants and Respondents.

Michael C. Ghizzoni, County Counsel, and William M. Dillon, Senior Deputy, for Amicus Curiae Santa Barbara County Air Pollution Control District on behalf of Defendants and Respondents.

Babal Nafici for Amicus Curiae Sierra Club on behalf of Defendant and Respondent San Luis Obispo County Air Pollution Control District.